**PENN HARRIS MADISON SCHOOL CORPORATION, Appellant–Defendant,**

v.

**Linda HOWARD, Individually and as Next Best Friend of David Howard, a Minor, Appellee–Plaintiff.**

No. 71A05–0410–CV–535.

Court of Appeals of Indiana.

Aug. 16, 2005.

Shannon L. Robinson, Kelley, Belcher & Brown, Bloomington, for Appellant.

Douglas D. Small, Foley & Small, South Bend, for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Linda Howard, on behalf of her minor son David Howard ("Howard"), filed suit against the Penn Harris Madison School Corporation ("Penn") for injuries that Howard received while performing in a school play. A jury entered a verdict in favor of Howard, and Penn appeals. The school presents two issues for our review:

1. Whether the trial court abused its discretion when it instructed the jury on the standard of care applicable to a seventeen-year-old child.

2. Whether the evidence supported instructing the jury on the last clear chance doctrine.

Howard cross-appeals and presents one issue for our review, namely, whether the trial court abused its discretion when it did not give his proffered instruction No. 6.

We reverse and remand for a new trial.

### FACTS AND PROCEDURAL HISTORY

Jon West is a former music teacher at Elsie Rogers Elementary School, which is a part of the Penn school corporation. During the summer after his freshman year of high school, Howard met West, who was then directing and producing a play for Howard's church. At that time, Howard's father had been diagnosed with ALS and was declining in health, and West and Howard developed a close relationship. West frequently directed and produced plays throughout the community, and Howard often assisted in the production of those plays by building sets and helping with the sound equipment.

In the fall of 2000, when Howard was a seventeen-year-old senior at Penn High School, West prepared to put on the play "Peter Pan" at West's elementary school. Because Howard enjoyed rock climbing, he and West discussed constructing a zip-line to allow the Peter Pan character to "fly" above the audience and onto the stage during the play.[1] West assisted Howard

---

1. Howard had never used a zip-line before, but he was familiar with carabiners from his

in purchasing supplies to construct the zip-line, but Howard basically constructed it himself. Howard strung a cable from rafters in the rear of the gymnasium to rafters located just behind the stage. A single-wheeled pulley was fixed onto the cable, and attached to the pulley was fabric webbing that ran down to two non-locking carabiners. In order to attach himself to the pulley, the performer wore a climbing harness with a metal ring at his waist which was clipped with a non-locking carabiner to the pulley.

On the night of dress rehearsal, Howard prepared to rehearse the stunt. He had previously tested the zip-line several times, but during those test-runs, Howard had hooked the webbing carabiner to a belly loop on the front of his harness. On the night of the rehearsal, however, Howard connected himself to the webbing through a loop on the back of the harness. In order to reach the cable, Howard placed a ladder on a portable stage at the rear of the gymnasium, and he climbed to the third rung of the ladder while West held the base of the ladder to secure it. Howard leaned against the wall while he fastened the webbing from the pulley to a loop located on the back of his harness. After attaching himself to the pulley, Howard turned toward the stage and jumped. But the carabiners did not hold, and Howard fell to the floor of the gymnasium. He suffered several injuries, including facial fractures, a severed facial nerve, a lacerated spleen, and fractures and nerve damage to his hands and wrists, which required surgery.

Linda Howard filed a complaint against Penn on behalf of her son, alleging that Penn's negligence was the proximate cause of Howard's injuries. At trial, over Penn's objections, the judge gave the jury Howard's proffered instructions on the standard of care to be exercised by a seventeen-year-old and on the last clear chance doctrine.[2] The jury found in favor of Howard and awarded him $200,000 in damages. This appeal ensued.

## DISCUSSION AND DECISION

### Standard of Review

Penn contends that the trial court abused its discretion when it gave the jury two of Howard's proffered jury instructions. The manner of instructing a jury lies largely within the discretion of the trial court, and we will reverse only for an abuse of discretion. *Mayes v. State,* 744 N.E.2d 390, 394 (Ind.2001). To constitute an abuse of discretion, the instruction given must be erroneous, and the instructions taken as a whole must misstate the law or otherwise mislead the jury. *Id.* When determining whether a trial court erroneously gave or refused to give a tendered instruction, we consider the following: (1) whether the tendered instruction correctly states the law; (2) whether there was evidence presented at trial to support giving the instruction; and, (3) whether the substance of the instruction was covered by other instructions that were given. *Id.*

### Issue One: Standard of Care

Penn first contends that instruction No. 3, regarding the standard of care ap-

---

previous rock climbing experience.

**2.** The Indiana Comparative Fault Act ("the Act") does not apply to governmental entities like public schools and its employees. *Wallace v. Rosen,* 765 N.E.2d 192, 200 (Ind.Ct. App.2002). Therefore, tort claims against such defendants are subject to the common law principles of negligence. *Id.* While the Act has eliminated the need for the last clear chance doctrine, *see Miller v. Ryan,* 706 N.E.2d 244, 249 (Ind.Ct.App.1999), it is still available where a governmental entity is a party to a tort action.

plicable to a seventeen-year-old, is an incorrect statement of the law. Thus, Penn maintains that the trial court abused its discretion when it gave the instruction. We must agree.

Instruction No. 3 reads as follows:

David Howard was born on October 5, 1983. The standard of care which David Howard was bound to exercise in regard to his own contributory negligence is *reasonable care [that] a person of like age, intelligence, and experience would ordinarily exercise under like or similar circumstances.* In determining whether David Howard was contributorily negligent, you should consider all facts and circumstances attendant to his involvement and participation in the activity in question.

Appellant's App. at 12 (emphasis added).

Our supreme court has recently reiterated the standard for determining the liability of children for their alleged tortious acts. In *Creasy v. Rusk*, 730 N.E.2d 659, 662 (Ind.2000), the court stated:

The Restatement ['(Second) of Torts § 283A (1965) ] standard of conduct for a child is "that of a reasonable person of like age, intelligence, and experience under like circumstances." Indiana reformulates the Restatement rule into a three-tiered analysis:

[C]hildren under the age of 7 years are conclusively presumed to be incapable of being contributorily negligent, from 7 to 14 a rebuttable presumption exists that they may be guilty thereof, and *over 14, absent special circumstances, they are chargeable with exercising the standard of care of an adult.*

(Citations omitted, emphasis added). Indeed, Indiana Pattern Jury Instruction

No. 5.25 states in relevant part that "[a] child over the age of fourteen (14) [absent special circumstances] must exercise the reasonable and ordinary care of an adult." In this case, Howard was seventeen years old at the time he was injured after falling from the zip-line. Thus, he was charged with exercising the standard of care of an adult absent special circumstances.[3]

Still, Howard maintains that a different standard of care applies where, as here, contributory negligence is asserted, i.e., where the Comparative Fault Act does not apply, and that the trial court correctly instructed the jury. But he does not cite to any authority which supports that contention, and we do not know of any rationale for applying two different standards of care.[4] In the alternative, Howard invites us to adopt "the Massachusetts rule," which allows a jury to evaluate the negligence of a minor plaintiff based on the standard of care of a child of like age, intelligence, and experience. Brief of Appellee at 31; *see Honeycutt ex. rel. Phillips v. City of Wichita*, 247 Kan. 250, 796 P.2d 549, 551 (1990). But we are bound to follow the precedent of our supreme court as set out in *Creasy. See Hatchett v. State*, 740 N.E.2d 920, 926 n. 13 (Ind.Ct. App.2000), *trans. denied*. Finally, Howard contends that any error in the giving of instruction No. 3 was harmless. Again, we cannot agree. Whether Howard's conduct is to be compared to a reasonable adult or to a reasonable person of like age, intelligence, and experience is critical to the jury's determination of contributory negligence in this case.

We conclude that the trial court abused its discretion when it gave instruction No.

---

**3.** Howard does not contend that the special circumstances exception applies here.

**4.** Howard cites to several Indiana cases decided prior to the Comparative Fault Act in

support of his contention. Because we see no reason to apply two different standards depending on whether the Act applies in a given case, we find those authorities inapposite.

because it is not a correct statement of the law. We reverse and remand for a new trial and instruct the trial court to give an instruction that sets out the correct statement of the law as reflected in *Creasy* and in Indiana Pattern Jury Instruction No. 5.25.

### Issue Two: Last Clear Chance

Penn next contends that the trial court abused its discretion when it instructed the jury on the last clear chance doctrine because that instruction was unsupported by the evidence. In particular, Penn asserts that the doctrine is not applicable here because there is no evidence that Penn had the last opportunity to avoid Howard's injury. Again, we must agree.

Instruction No. 12 provides:

Indiana has adopted the doctrine of last clear chance to allow for recovery by a plaintiff in a claim involving alleged negligence on the part of the defendant and the plaintiff. The last clear chance doctrine provides that the contributory negligence of a plaintiff does not prevent recovery by that plaintiff for the negligence and injuries caused by the defendant where it appears that the defendant by exercising reasonable care might have avoided injuring the plaintiff, notwithstanding the plaintiff's own negligence. A plaintiff may recover under the last clear chance doctrine if a plaintiff proves, by a preponderance of the evidence, the following:

1. the defendant had actual knowledge of the plaintiff;

2. the defendant knew of plaintiff's perilous position;

3. the defendant had physical control over the instrumentality and *had the last opportunity through the exercise of reasonable care to avoid the injury;* and

4. the plaintiff was oblivious to his own danger, notwithstanding his contributory negligence.

Appellant's App. at 12–13 (emphasis added).

Our supreme court has explained the last clear chance doctrine as follows:

For the last clear chance doctrine to be operative, the plaintiff, through his own negligence, must have placed himself in a position of peril from which he cannot extricate himself, or to which he is oblivious. In addition, *the defendant* must know of the plaintiff's perilous position, and *must have the last clear chance to avoid the injury to the plaintiff.* The defendant then must have failed to exercise due care to prevent the injury .... "The last clear chance contemplates a known peril which can be avoided by due care, not a peril which might have been known by the exercise of due care. In other words, it is the negligent failure to avoid a discovered peril that makes [the doctrine] applicable ...." However, knowledge of the plaintiff's peril is not, of itself, sufficient to impose liability. In addition, there is implicitly an element of time involved. In order for the doctrine to apply, the peril must be known "in time to clearly afford an opportunity [for the defendant] to avoid injuring the one in peril."

*Sims v. Huntington,* 271 Ind. 368, 393 N.E.2d 135, 138 (1979) (citations omitted, emphasis added).

This court has further explained that "[w]here the evidence in the case tends to show that the situation of the parties just prior to the injury was such that the defendant, by the exercise of due care, could have prevented it, and that the plaintiff could not, then the [last clear chance doctrine] becomes applicable." *Indianapolis Traction & Terminal Co. v. Croly,* 54 Ind. App. 566, 96 N.E. 973, 979 (1911). "If, however, the undisputed evidence shows that *the opportunity of the plaintiff to avoid the injury was as late or later than*

*that of the defendant, the rule can have no application,* and the court should refuse to instruct upon the doctrine under consideration." *Id.* (emphasis added).

■ Before an instruction on the last clear chance doctrine can be properly tendered, there must be evidence which supports each of the four elements of the doctrine. *Sims*, 393 N.E.2d at 139. We conclude that there is no evidence that Penn had the last opportunity to avoid Howard's fall, or, for that matter, that Howard could not have prevented the fall. *See Croly*, 96 N.E. at 979. Thus, we need not address whether the evidence supports any of the other elements.

In particular, the undisputed evidence shows that Howard climbed the ladder of his own accord and attempted to hook himself to the pulley before he fell. While West was holding the ladder steady for Howard, there is no evidence that West or any other Penn employee assisted Howard in getting himself attached to the pulley. While no one knows for certain what mechanism failed and caused Howard's fall, the evidence clearly shows that Howard had the latest opportunity to avoid it. He had a choice whether to descend from the ladder or to attempt the stunt. Even assuming that Penn was negligent in planning the stunt, because Howard is held to the standard of care of an adult, his actions in climbing the ladder and attempting to attach himself to the zip-line preclude application of the last clear chance doctrine. *See id.* We hold that the trial court abused its discretion when it gave instruction No. 12.

## CROSS–APPEAL

■ Finally, Howard contends that the trial court abused its discretion when it did not give his proffered instruction No. 6, which reads as follows:

*No Contributory Negligence Where a Defendant asks Plaintiff to Engage in the Conduct in Question*

The Penn Schools have raised the defenses of contributory negligence and incurred risk with respect to the claim brought by David Howard. These defenses will not be available to the Penn Schools if you were to find that the Penn Schools had either requested of David Howard that he perform the theatrical stunt in question or that they assisted David Howard in the performance of that theatrical stunt. Under the law of negligence, contributory negligence is not an available defense where the defendant requests, impliedly or expressly, that the plaintiff engage in the activity causing injury. Thus, in this case, if you find that the Penn Schools, through its teacher, Jon West, or its principal Leroy Heller, either requested of David Howard that he perform the theatrical stunt in question or that either assisted David Howard in undertaking such theatrical stunt, then you should not find that David Howard was contributorily negligent in undertaking that stunt.

*School City of Gary v. Claudio,* 413 N.E.2d 628, 632 (Ind.Ct.App.1980); *Miller v. Greisel [Griesel]*, 261 Ind. 604, 608 [308] N.E.2d 701 (1974); *Miller [Murray] v. University of New York*, 707 N.Y.S.2d 816, 184 Misc.2d 453, 456–57 (2000).

See, *Fullmer v. Wohlfeiler & Beck*, 905 F.2d 1394, 1396–99 (10th Cir.1990); *Rowe v. Sisters of Pallottine Missionary Society*, [211 W.Va. 16,] 560 S.E.2d 491 (W.Va.2001) (a patient "has the right to rely upon the instructions and directions of his physician and incurs no liability by so doing"); *Santoni v. Schaerf,* 48 Md. App. 498, 428 A.2d 94 (1981) ("it is not contributory negligence for a patient to follow a doctor's instructions or rely on

his advice"); *Largess v. Tatum [Tatem]*, 130 Vt. 271, 291, 291 A.2d 398 (1972); *Los Alamos Medical Center, Inc. v. Coe*, 58 N.M. 686, 275 P.2d 175 (1954).

Appellee's App. at 4 (emphasis original).

█ Howard is correct that schools have a special duty of care towards their students. Specifically, our supreme court has stated:

> [T]he law of this State recognizes a duty for school authorities to exercise reasonable care and supervision for the safety of the children under their control. We believe that schools have such a responsibility and that the relationship of school pupils and school authorities should call into play the well recognized duty in tort law that persons entrusted with children, or others whose characteristics make it likely that they may do somewhat unreasonable things, have a special responsibility recognized by the common law to supervise their charges. ... The traditional standard [of care] to be applied is whether the defendants exercised their duty with the level of care that an ordinary prudent person would under the circumstances....
> [T]he common law of this State recognizes a duty on the part of school personnel to exercise ordinary and reasonable care for the safety of the children under this authority.
> It should be emphasized here, however, that schools are not intended to be insurers of the safety of their pupils, nor are they strictly liable for any injuries that may occur to them. The duty imposed by this legal relationship is a practical recognition by the law that school officials are required to exercise due care in the supervision of their pupils; that while they are neither an insurer of safety nor are they immune from liability.

*Miller v. Griesel*, 261 Ind. 604, 308 N.E.2d 701, 706 (1974).

Howard maintains that in light of a school's "heightened" duty of care to students, Penn should not be able to assert the affirmative defense of contributory negligence because West directed Howard to perform the aerial stunt. Specifically, Howard asserts that where a defendant causes a plaintiff to engage in conduct that results in injury, that defendant cannot ask a trier-of-fact to place any blame on the plaintiff. In support of that contention, Howard directs us to case law from other jurisdictions. There is no Indiana law directly on point to support his position.

We do not find the case law upon which Howard relies persuasive. Initially, we note that one of the opinions is no longer good law. *See Santoni v. Schaerf*, 48 Md. App. 498, 428 A.2d 94 (1981), *rev'd by* 292 Md. 582, 441 A.2d 323 (1982). Further, the other cases involve alleged negligence in the rendering of professional services where the plaintiffs reasonably relied upon the advice of defendants who were professionals. For example, in *Rowe v. Sisters of Pallottine Missionary Soc'y*, 211 W.Va. 16, 560 S.E.2d 491, 497 (2001), the court observed:

> In the context of medical malpractice actions, courts usually place extreme limits upon a health care provider's use of the defense of comparative negligence. Courts do this because of the "*disparity in medical knowledge between the patient and the physician,*" and because of the "patient's justifiable reliance on the [physician's] recommendations and care."

(Citations omitted, emphasis added). And in *Stroud v. Arthur Andersen & Co.*, 37 P.3d 783, 789 (Okla.2001), the court recognized that a certified public accountant's duty to his client, "while not coterminous with those of lawyers and doctors, is certainly comparable .... The Court is mindful of the enhanced obligations and respon-

sibilities owed to the public by a person who dons the mantle of a professional."

 In essence, Howard invites us to analogize a physician's duty to his patients and a certified public accountant's duty to his clients with a school's duty to its students. But Howard ignores the fundamental difference between the two types of relationships. Physicians and certified public accountants have specialized knowledge upon which their patients and clients are generally entitled to rely. But a school does not render a service for its students comparable to the specialized fields of medicine and accounting. Rather, a school merely has a duty to exercise ordinary and reasonable care for the safety of its students. *See Miller*, 308 N.E.2d at 706.

We conclude that Howard's proffered instruction No. 6 is not an accurate statement of Indiana law. As such, we hold that the trial court did not abuse its discretion when it refused to give the instruction.

### Conclusion

The trial court abused its discretion when it instructed the jury regarding the standard of care attributable to Howard and the last clear chance doctrine. We reverse and remand for a new trial. The trial court did not abuse its discretion when it refused to give Howard's proffered instruction No. 6.

Reversed and remanded for a new trial.

SULLIVAN, J., and RILEY, J., concur.