ATTORNEY FOR APPELLANT
Shannon L. Robinson
Bloomington, Indiana

ATTORNEY FOR APPELLEES
Douglas D. Small
South Bend, Indiana

In the

# Indiana Supreme Court

No. 71S05-0511-CV-509

PENN HARRIS MADISON SCHOOL
CORPORATION,

*Appellant (Defendant below)*,

v.

LINDA HOWARD,
INDIVIDUALLY AND AS NEXT BEST FRIEND
OF DAVID HOWARD, A MINOR,

*Appellees (Plaintiffs below)*.

Appeal from the St. Joseph Superior Court, No. 71D05-0110-CT-220
The Honorable Jenny Pitts Manier, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 71A05-0410-CV-535

**March 1, 2007**

**Sullivan, Justice.**

Two decades ago, the Legislature abolished the harsh doctrine of "contributory negligence" by which a man or a woman, injured through the fault of another, was denied any recovery if he or she was even slightly at fault. However, the defense of contributory negligence remains available to government entities like public schools. This case requires our focus on this relatively dormant concept.

## Background

David Howard attended Penn High School in the Penn Harris Madison School Corpora-tion ("PHM"). Throughout high school, Howard helped his friend, Jon West, produce theatrical plays and build sets for those plays. West was a music teacher in a PHM elementary school.

During his senior year, Howard, age 17, helped West produce "Peter Pan" at the elemen-tary school. Howard, who had experience rock climbing and rappelling, devised and constructed a pulley mechanism designed to allow the Peter Pan character to "fly" above the audience. How-ard made the apparatus from a climbing harness, spring-hinged metal rings (carabiners), fabric webbing, a pulley, and a cable hung from the rafters. Howard himself tested the apparatus sev-eral times.

On the night of dress rehearsal, where a number of people were present, Howard climbed a ladder that West was holding and connected himself to the webbing through a loop on the back of the harness. Howard jumped from the ladder. The apparatus failed and Howard fell to the gym floor, suffering serious injuries to his face, spleen, hands, and wrists.

Howard's mother, individually and as his next friend, sued PHM, alleging its negligence caused Howard's injuries. During the trial on their claims, the plaintiffs requested the trial court give the jury certain instructions which are the subject of this appeal. Over PHM's objection, the court gave the jury two of the plaintiffs' proposed instructions. (Those instructions will be dis-cussed in detail infra.) Over plaintiffs' objection, the court refused to give the jury another of plaintiffs' proposed instructions. The jury returned a verdict for the plaintiffs and awarded them $200,000 in damages.

Contending error with respect to the two instructions, PHM appealed. Plaintiffs cross-appealed with respect to the third instruction. The Court of Appeals held that the trial court had committed reversible error in giving the two instructions to which PHM had objected. It also held that the trial court had correctly refused to give the instruction with respect to which the plaintiffs cross-appealed. Penn Harris Madison Sch. Corp. v. Howard, 832 N.E.2d 1013 (Ind. Ct.

App. 2005).  The plaintiffs sought, and we granted, transfer.  Penn Harris Madison Sch. Corp. v. Howard, 841 N.E.2d 188 (Ind. 2005) (table).

## Discussion

Prior to 1985, Indiana common law recognized a defense of "contributory negligence"[1] that barred recovery on a plaintiff's negligence claim if the plaintiff was even slightly at fault.  In that year, the harsh rule of contributory negligence was substantially revised when a "modified form of comparative fault" took effect.  Nelson J. Becker, Indiana's Comparative Fault Law: A Legislator's View, 17 Ind. L. Rev. 881, 881 (1984).[2]  Although the Legislature dictated that fault could be apportioned between the plaintiff and defendant in many situations, a plaintiff was still barred from recovery if the plaintiff's own fault was greater than fifty percent.  Ind. Code § 34-4-33-4 (Supp. 1985) (now I.C. § 34-51-2-6 (2004)).  And the Legislature also specified that the provisions of the new comparative fault statute would not apply to governmental entities.  I.C. § 34-4-33-8 (Supp. 1985) (now I.C. § 34-51-2-2 (2004)).  This exemption for governmental entities from comparative fault means that the common law contributory negligence principles apply when a governmental entity is the defendant in negligence litigation.  Funston v. Sch. Town of Munster, 849 N.E.2d at 595; Mangold v. Indiana Dep't of Natural Res., 756 N.E.2d 970, 977 (Ind. 2001) (Shepard, C.J., concurring).[3]

---

[1] As a definitional matter, "contributory negligence" is the failure of a plaintiff to exercise the reasonable care an ordinary person would for his own protection and safety.  Funston v. Sch. Town of Munster, 849 N.E.2d 595, 598 (Ind. 2006).

[2] Former Representative Becker's article is one of a collection of articles published by the Indiana Law Review following a Symposium on Indiana's new Comparative Fault Act at the time of its adoption in 1983.  See also Lawrence P. Wilkins, The Indiana Comparative Fault Act at First (Lingering) Glance, 17 Ind. L. Rev. 687 (1984).  Other Symposium articles include:  Roger L. Pardieck, The Impact of Comparative Fault in Indiana, 17 Ind. L. Rev. 925 (1984); David Randolph Smith & John W. Wade, Fairness: A Comparative Analysis of the Indiana and Uniform Comparative Fault Acts, 17 Ind. L. Rev. 969 (1984).

[3] Professor Wilkins has characterized as "a dual system of liability" the system resulting from comparative fault governing non-governmental defendants and contributory negligence applying to governmental defendants.  Wilkins, supra note 2, at 729.  Having a dual system of liability, he says, raises the policy concerns of "the fairness of the duality, the economics of maintaining two systems, and the question of whether societal interests in protection from harm are adequately served by the two systems."  Id.  He also identifies practical issues in the administration of a dual system that arise in claims involving a government worker as a joint or concurrent tortfeasor.  Id.  This latter concern was also identified by Justice Krahulik in Templin v. Fobes, 617 N.E.2d 541, 544 n.1 (Ind. 1993).

In this case, the defendant PHM – a public school corporation and, therefore, a governmental entity – asserted the defense of contributory negligence: that it had no liability to Howard because he was at least slightly at fault for the injuries he suffered. As noted above, the jury found in Howard's favor and against the defendant school corporation.

There are three issues in this appeal – two raised by PHM, which is the appellant, and one by the plaintiffs, who are the appellees. First, PHM argues that the trial court's instruction to the jury on the standard of care to which it should hold Howard was too lenient. Second, PHM argues that the trial court should not have allowed the jury to impose liability on it under another common law tort rule, the doctrine of "last clear chance." Third, the plaintiffs argue that the trial court should have instructed the jury that the defense of contributory negligence was not available to PHM in these circumstances because of the special obligation of care that schools have for their pupils. We do not reach the plaintiffs' argument because we affirm the judgment of the trial court.

**I**

At the plaintiffs' request, the trial court instructed the jury that in deciding whether Howard was guilty of contributory negligence, it must determine whether he had exercised the "reasonable care [that] a person of like age, intelligence, and experience would ordinarily exercise under like or similar circumstances." Penn Harris, 832 N.E.2d at 1016 (alteration in original). The Court of Appeals held that the trial court had committed reversible error in giving the instruction.

The Court of Appeals properly determined that the instruction given by the trial court was not a correct statement of Indiana law. Children over the age of 14, absent special circumstances, are chargeable with exercising the standard of care of an adult. This was the explicit holding of the Court of Appeals in Cedars v. Waldon, 706 N.E.2d 219, 224 (Ind. Ct. App. 1999), and is reflected in Indiana Pattern Jury Instruction No. 5.25 ("[a] child over the age of fourteen (14) . . . must exercise the reasonable and ordinary care of an adult"). The principle has been recited as black letter law in such opinions as Creasy v. Rusk, 730 N.E.2d 659, 662 (Ind. 2000),

4

and <u>Bailey v. Martz</u>, 488 N.E.2d 716, 721 (Ind. Ct. App. 1986), <u>trans. denied</u>.[4]

The plaintiffs make no mention of any of these cases, either in their brief to the Court of Appeals or in their briefs to this Court. They contend instead that the instruction given by the trial court reflects the majority rule in other states and that Indiana's approach is "an obvious hypocrisy," because children over the age of 14 are not treated as adults in certain other areas of Indiana law. Appellees' Br. at 33-34. These are respectable arguments but, particularly in the absence of any attempt to distinguish controlling precedent and its policy underpinnings, they are unavailing.

In <u>Creasy</u>, we addressed the standard of care for individuals with mental disabilities. A number of the policy reasons supporting the reasonable person standard adopted in that context also support holding individuals over the age of 14, absent special circumstances, to the standard of care of an adult. First, it provides an incentive to those responsible for children and interested in their estates to prevent harm and restrain those who are potentially dangerous. Second, it avoids the administrative problems involved in courts and juries attempting to identify and assess what a "reasonable person of like age, intelligence, and experience under the circumstances" would do. And third, it imposes on individuals over 14 years of age the cost of the damage they cause if they engage in dangerous activities. <u>Creasy</u>, 730 N.E.2d at 664.

At bottom, the standard of care we impose on individuals over the age of 14 is a neutral principle of law, operating irrespective of whether the child is plaintiff (as here), defendant (e.g., a 14-year-old or 16-year-old driver), or even a non-party. Howard would be held to this standard of care whether he was plaintiff or defendant – and whether the case was being tried under comparative fault or contributory negligence. We believe that it is the harshness of the rule of contributory negligence, not this neutral standard of care, that imposes the greatest hardship on Howard in this case.

Howard was 17 years old at the time he was injured. As such, the law charged him with

---

[4] Justice Rucker's opinion in <u>Mangold v. Indiana Department of Natural Resources</u> also acknowledges this principle. <u>Mangold</u>, 756 N.E.2d at 976.

exercising the standard of care of an adult, not that of "a person of like age."[5]  It was error for the trial court to give the jury an incorrect instruction on the law.  See Wal-Mart Stores, Inc. v. Wright, 774 N.E.2d 891 (Ind. 2002); Guyton v. State, 771 N.E.2d 1141, 1144 (Ind. 2002).

Even when a jury is given an incorrect instruction on the law, we will not reverse the judgment unless the party seeking a new trial shows "a reasonable probability that substantial rights of the complaining party have been adversely affected." Elmer Buchta Trucking, Inc. v. Stanley, 744 N.E.2d 939, 944 (Ind. 2001) (quoting Peak v. Campbell, 578 N.E.2d 360, 362 (Ind. 1991)).

We are unable to find that PHM has made such a showing here.  The offending instruction asked the jury to determine whether Howard exercised the "reasonable care [that] a person of like age, intelligence, and experience would ordinarily exercise under like or similar circumstances." Penn Harris, 832 N.E.2d at 1016 (alteration in original).  Throughout this case, PHM's argument has been that Howard was "an exceptional young man," Appellant's Br. at 35, indeed, that he had been "described by virtually ever[y] witness as being intelligent, mature, and responsible," id.  Given the way "virtually every witness" and PHM itself characterized Howard, we believe that the jury would have considered the reasonable care that a person of like age, intelligence, and experience – a person who was "an exceptional young man, intelligent, mature, and responsible" – would ordinarily exercise under "like or similar circumstances" to be that of an adult.  As this is the standard that the law imposes, we find the error in giving the instruction here to have been harmless.

## II

At the plaintiffs' request, the trial court instructed the jury that it could find in favor of Howard, notwithstanding contributory negligence on his part, if the plaintiffs established entitlement to recovery under the "last clear chance" doctrine.  The Court of Appeals found that the

---

[5] Our case law is clear that the standard of care applicable to individuals over the age of 14 applies, "absent special circumstances."  Plaintiffs argue that such circumstances were present, Appellees' Br. at 36-37, but because plaintiffs argued for an instruction that was not a correct statement of law, this line of argument is not open to them.

trial court had committed reversible error in giving this instruction as well.

The doctrine of last clear chance, as a general proposition, provides that the contributory negligence of a plaintiff does not prevent recovery by that plaintiff for the negligence and injuries caused by the defendant if the defendant by exercising reasonable care might have avoided injuring the plaintiff. In the heyday of contributory negligence, litigation over the applicability of last clear chance was frequent and intense.[6] But in the world of comparative fault, where the relative fault of plaintiff and defendant are assessed, the last clear chance doctrine, once the subject of intense debate as to its contours, has been much less at issue during the past two decades.

The Court of Appeals faithfully applied the last clear chance doctrine in this case. It properly noted that Howard had the burden of proving, among other elements, that the defendant "had the last opportunity through the exercise of reasonable care to avoid the injury." Penn Harris, 832 N.E.2d at 1017. It quoted controlling authority that "the defendant . . . must have the last clear chance to avoid the injury to the plaintiff." Id. (quoting Sims v. Huntington, 271 Ind. 368, 393 N.E.2d 135, 138 (1979)). And it also quoted one of its own cases for the proposition that no jury instruction on last clear chance should be given if "the undisputed evidence shows that the opportunity of the plaintiff to avoid the injury was as late or later than that of the defendant." Id. at 1017-18 (quoting Indianapolis Traction & Terminal Co. v. Croly, 54 Ind. App. 566, 96 N.E. 973, 979 (1911)).

We think it highly likely that had the Legislature not adopted comparative fault and the contributory negligence regime continued apace, this Court would have adopted the formulation of the last clear chance doctrine embodied in §§ 479 and 480 of the Restatement of the Law (Second) Torts[7] and hold them to be the law of Indiana today. But the Restatement does not al-

---

[6] Professor Wilkins counted 32 reported appellate level cases in Indiana in the 18 years preceding adoption of comparative fault in which last clear chance was at issue. Wilkins, supra note 2, at 858 n.500.

[7] The text of the Restatement sections are as follows:

§ 479. Last Clear Chance: Helpless Plaintiff

ter the requirement that the defendant have the time to avert the harm to the plaintiff. Comment i to Restatement § 479 reads:

> In order that the defendant may be liable, it is necessary that he have discovered, or should have discovered, the plaintiff's dangerous position in sufficient time to enable him to avert his harm by the careful use of his then existing ability. Otherwise his failure to exercise reasonable care cannot make him liable, since it is not a substantial factor in bringing about the plaintiff's harm and therefore cannot be its cause.

We agree with the Court of Appeals that there was no evidence that PHM had the last opportunity to "avert" or prevent Howard's fall. Penn Harris, 832 N.E.2d at 1018 (citing Croly, 96 N.E. at 979). As the Court of Appeals pointed out:

> [T]he undisputed evidence shows that Howard climbed the ladder of his own accord and attempted to hook himself to the pulley before he fell. While West was holding the ladder steady for Howard, there is no evidence that West or any other [PHM] employee assisted Howard in getting himself attached to the pulley. While no one knows for certain what mechanism failed and caused Howard's fall, the evidence clearly shows that Howard had the latest opportunity to avoid it. He had a choice whether to descend from the ladder or to attempt the stunt.

---

A plaintiff who has negligently subjected himself to a risk of harm from the defendant's subsequent negligence may recover for harm caused thereby if, immediately preceding the harm,
    (a) the plaintiff is unable to avoid it by the exercise of reasonable vigilance and care, and
    (b) the defendant is negligent in failing to utilize with reasonable care and competence his then existing opportunity to avoid the harm, when he
        (i) knows of the plaintiff's situation and realizes or has reason to realize the peril involved in it or
        (ii) would discover the situation and thus have reason to realize the peril, if he were to exercise the vigilance which it is then his duty to the plaintiff to exercise.

§ 480. Last Clear Chance: Inattentive Plaintiff

A plaintiff who, by the exercise of reasonable vigilance, could discover the danger created by the defendant's negligence in time to avoid the harm to him, can recover if, but only if, the defendant
    (a) knows of the plaintiff's situation, and
    (b) realizes or has reason to realize that the plaintiff is inattentive and therefore unlikely to discover his peril in time to avoid the harm, and
    (c) thereafter is negligent in failing to utilize with reasonable care and competence his then existing opportunity to avoid the harm.

Id.

The instruction on last clear chance given by the trial court in this case was an accurate statement of law. But there must also be evidence in the record to support the giving of the instruction. It is error to give an instruction that is not "applicable to the evidence." Dahlberg v. Ogle, 268 Ind. 30, 373 N.E.2d 159, 164 (1978). Because there was no evidence to support it, it was error for the trial court to have given the instruction.

Even when an instruction is erroneously given because it has no evidence to support it, "the giving of such instructions does not require a reversal where no prejudice resulted to the appellant." Baker v. Mason, 253 Ind. 348, 242 N.E.2d 513, 515 (1968). Our Court's reasoning in Baker was that where an instruction presents a correct statement of law, but no evidence supports it, the objecting party is generally unharmed by the instruction. Id. Accord Indianapolis Ath. Club, Inc. v. Alco Std. Corp., 709 N.E.2d 1070, 1073 (Ind. Ct. App. 1999), trans. denied, 726 N.E.2d 304 (Ind. 1999) (table). For example, several cases expressly hold that reversal is not required where an instruction properly defines the applicable law of contributory negligence but there is, in fact, no evidence of contributory negligence in the record. See Spirito v. Temple Corp., 466 N.E.2d 491, 493 (Ind. Ct. App. 1984), trans. denied; Indianapolis Traction & Terminal Co. v. Peeler, 69 Ind. App. 645, 122 N.E. 600 (1919).

We find this to be the situation here. The jury was instructed on the law of last clear chance, including that "[a] plaintiff may recover under the last clear chance doctrine if a plaintiff proves, by a preponderance of the evidence, . . . [that] the defendant had physical control over the instrumentality and had the last opportunity through the exercise of reasonable care to avoid the injury." Penn Harris, 832 N.E.2d at 1017. But there simply is no evidence in the record that PHM had either physical control over the pulley mechanism or the last opportunity to avert or prevent the injuries Howard suffered. Like Baker, Indianapolis Athletic Club, Spirito, and Peeler, in the absence of any such evidence, we do not think the jury could have found that the doctrine of last clear chance applied. We find no prejudice to PHM from the instruction.

9

**Conclusion**

We affirm the judgment of the trial court.

Dickson, Boehm, and Rucker, JJ., concur. Shepard, C.J., dissents with a separate opinion.

**Shepard, Chief Justice, dissenting.**

The essence of today's holding is that an erroneous jury instruction about tort liability is harmless even where 1% difference in fault separates a defense verdict from a plaintiff's verdict.

Howard's lawyer repeatedly urged the jury that his client was "just a 17-year-old kid" and asked the judge to tell the jury that he need only be held to the standard of a 17-year-old. Faced with the knowledge that this is how the court would instruct the jury, defense counsel necessarily argued that Howard was actually quite a mature 17-year-old, more like an adult.

All five of us agree that the instruction was error, that the court should have instructed the jury that Howard was to be held to the standard of an adult. Had a proper instruction been given, Howard's counsel would not have been able to argue that he should be held to the standard of a "little kid." And, Penn Harris counsel would not have been forced to argue "maturity beyond his years."

So, the question is whether we can say the court's error was harmless. Among the ways one can assess this is to ask what we might do in the more common setting, that is, comparative fault.

If a plaintiff had been injured by a 17-year-old reckless driver, and the jury was told that he should be held only to the standard of care expected from a 17-year-old, and the jury found for the defendant by allocating fault at 51-49, I would expect we would say that the plaintiff should get a new trial in light of the closeness of the call. If the jury had instead returned a defense verdict at 65-35, not really a close call, we might very well hold that the erroneous instruction "did not affect the substantial rights of the parties," to use the test of Trial Rule 61.

This appeal, of course, arises in a contributory negligence setting. The jury is thus asked to decide whether the defendant is 100% at fault or only 99% at fault. For the same reason I would vote to give the plaintiff whose fate was decided by the narrowest of margins a new trial before a properly instructed jury, I think the defendant here is entitled to the same.

11