**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Dec 20 2012, 9:22 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**ALEXANDER WILL**
**AMANDA J. GRIFFITH**
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**JEFFREY S. MCQUARY**
Brown Tompkins Lory
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

THE MARION COUNTY SHERIFF'S
DEPARTMENT,

    Appellant-Defendant,

vs.

GWENDOLYN Y. DAVIS, individually and
as Administratrix of the Estate of ANTHONY J.
ROBINSON, JR.,

    Appellee-Plaintiff.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 49A04-1201-CT-14

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable David Shaheed, Judge
Cause No. 49D01-1101-CT-1106

**December 20, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issue

Anthony Robinson Jr. was arrested and taken to jail, and two days later he died in his cell. Gwendolyn Davis, Robinson's mother, acting individually and on behalf of the Estate of Anthony Robinson Jr., filed a complaint against the Marion County Sheriff's Department alleging negligence, intentional infliction of emotional distress, and wrongful death. The Sheriff's Department moved for summary judgment, and the trial court denied its motion. The Sheriff's Department raises one issue in this interlocutory appeal: whether summary judgment should be granted as to each of Davis's claims. Concluding summary judgment is appropriate as to Davis's individual claims but not as to the claims of the estate, we reverse in part and affirm in part.

## Facts and Procedural History

On November 9, 2007, Robinson was arrested by Indianapolis Metropolitan Police for possession of a firearm by a serious violent felon, carrying a handgun without a license, and possession of marijuana. He was taken to the Marion County Jail, where he was given a medical intake screening. Robinson denied drug usage, denied that he was presently "detoxing" from drug usage, denied any immediate medical needs, denied having any medical issues the jail should know about, and denied having any notable medical history. Appendix of Appellant at 53.

During the day in the jail, the cell doors are open and inmates have access to the common area outside their cells called the "range." Id. at 99. Inmates can communicate with officers via an intercom system located in the range, but when located in their cells inmates can only communicate with officers by either banging on their cells or shouting loud enough for an officer to hear them.

2

When inmates have medical needs, they are typically taken care of on-site. A physician is there during the day on weekdays, and one is on-call during evenings and weekends. Nurses are available twenty-four hours a day, seven days a week. The officers begin locking inmates in their cells for the night around 11:00 p.m., and they complete the "lights out" process as late as three hours later.

Robinson was placed in a cell with Christopher Ping. In a sworn declaration, Ping stated:

4. In the evening of November 10th, Anthony told me that he was sick and his stomach hurt. He seemed agitated. He couldn't sit still and was constantly moving around.

5. Before lights out he told a correctional officer that his stomach hurt and that he needed to see a doctor but he was not taken to see one.

6. He later told me that the pain was getting worse. He left our cell to go out onto the range where there is an intercom to speak to correctional officers. He told me he was going to ask to see a doctor for his stomach pain. Anthony used the intercom at least twice by himself. I could not hear what he told them because the intercom is on the range and I was in our cell.

7. When no one came after Anthony's requests for help, . . . I buzzed the guards and spoke to someone on the other end. I told him that my buddy was really sick, that he had stomach pain, and needed to see a doctor.

8. Sometime after lights out a correctional officer walked by our cell. When Anthony got out of his bunk to bang on the door to get the officer's attention he was doubled over in pain. He spoke to him at the door, where he was clutching his stomach with his arm. He told the correctional officer that his stomach hurt really bad and that he needed to see a doctor. But the officer told him he'd have to wait until morning to be taken to the infirmary.

9. . . . [Anthony] told the officer who came to our cell that he was in a great deal of pain and needed to see a doctor immediately. He never talked about getting sick from the food. . . .

10. After the guard left . . . Anthony was talking to me like he knew he would die.

11. Soon he began pacing back and forth in our cell talking out loud to no one in particular. He was speaking in no language that I ever heard before. I think he was speaking in tongues.

12. Somehow I fell asleep despite all the noise. I awoke around 3:00 a.m. and Anthony was laying silently in his bunk bed. I was in the lower bunk

3

and his arm was hanging down at a funny angle. I reached up and touched his arm and it felt cold. I thought he had gone numb.

13. When I got up at 7:30 Anthony's arm was still hanging over the bunk. I touched Anthony's back and it felt cold. He was holding a towel to his mouth; there was blood on the towel and his tongue was sticking out.

Id. at 63-65.

Ping's recitation of the events of November 10-11, 2007, is dramatically different from that given by Officer Joseph Maxey during a deposition. Officer Maxey recounted that during the "lights out" procedure Robinson said, "Hey, I need to talk to you for a minute, my stomach's hurting." Id. at 69. When Officer Maxey returned after a few moments, he asked Robinson what the problem was, and Robinson replied, "Well, my stomach, my stomach's hurting me." Id. at 70. Officer Maxey asked why his stomach hurt, and Robinson stated, "I don't know, my stomach just hurts," and "I've had a couple bites of a bologna sandwich." Id.

> So [I] said, well, you know, it could be the bologna sandwich. Then I kind of went into, you know, how – tell me, what kind of pain is it, is it a stomachache. I said, "Is it a very severe pain in your stomach?" And at that point he just kinda hesitated. So I kinda reiterated to him. I said, "Well, is it like hey, you know, my stomach hurts or is it, you know, oh, my God, my stomach's killing me, I got to see someone?" I said, "What kind of pain is it?"
> And he just kinda looked at me and said – he said, "Really, it's just a stomachache." I said all right. I said, "Well," I said, "do you need to see the nurse or is it, you know, is it just a stomachache?" And he just kinda sat there for a second and he says "No," he said, "it's really just a stomachache. And at that point I told him, I said, "Are you sure you're okay, it's just a stomachache?" And he said, "Yeah, I'm sure."

Id. at 71.

Two autopsies were performed. After examining Robinson's body on November 12, 2007, the Marion County Coroner's Office concluded the cause of Robinson's death was cocaine intoxication. The coroner noted "several small irregular particles of a

4

whitish slightly granular substance" in Robinson's digestive system, which tested positive for cocaine. Id. at 84. His blood and urine also tested positive for cocaine. A second autopsy was performed on November 14, 2007, by Indiana Autopsy, which concluded there was "[n]o definitive anatomic cause of death." Id. at 142.

In addition to the autopsy reports, Davis designated a declaration and a letter from Ronald Himmelman, M.D. After reviewing both autopsy reports, Dr. Himmelman made the following conclusions in his declaration:

> 6. Because of the second autopsy it cannot be stated with medical certainty that Anthony Robinson, Jr. died of cocaine intoxication.
> 7. Second, the maximal effects of cocaine occur within several hours of usage. Anthony Robinson's symptoms—of which the only one known was abdominal pain—occurred well over 24 hours after his arrest. If he had casually used cocaine prior to his arrest, or if he had orally "stuffed" a large amount of cocaine just prior to being arrested, the effects of this should have been visible almost immediately and peaked a few hours later.
> * * *
> 12. Finally, I conclude that if Robinson had been sent to an emergency room in the evening of November 10th when he first reported abdominal pain, whether that pain was related to cocaine or not, it is more likely than not that Robinson would have survived.

Id. at 138-39. In his letter, Dr. Himmelman stated "[t]he abdominal pain likely was caused by the cocaine in his system," and that if Robinson had been taken to the emergency room when he initially complained of pain, "the dysrhythmia that likely killed him could have been prevented or treated."[1] Id. at 141.

Davis brought suit against the Sheriff's Department, acting individually and as the administratrix of the Estate of Anthony Robinson Jr., raising claims of negligence, intentional infliction of emotional distress, and wrongful death. The Sheriff's

---

[1] Dysrhythmia is "a disordered rhythm exhibited in a record of electrical activity of the brain or heart." Merriam-Webster (2012), http://www.merriam-webster.com (search for "dysrhythmia").

Department moved for summary judgment, arguing it was entitled to summary judgment because "Robinson's own actions were a contributing and proximate cause of his death" and "[g]overnmental entities have no liability where a Plaintiff is contributorily negligent." Id. at 31. Further, the Sheriff's Department contended "Plaintiffs have not preserved through a timely tort claim notice any claims on behalf of Plaintiff Gwendolyn Davis or any claims of intentional infliction of emotional distress. Therefore, these claims are barred by the Indiana Tort Claims Act." Id. at 32. The trial court denied the Sheriff's Department's motion, concluding genuine questions of material fact remained. This court accepted jurisdiction of the Sheriff's Department's interlocutory appeal. Additional facts will be supplied as necessary.

## Discussion and Decision

### I. Standard of Review

Our review of a grant or denial of a motion for summary judgment is the same as it is for the trial court: "[c]onsidering only those facts that the parties designated to the trial court, we must determine whether there is a genuine issue as to any material fact and whether the moving party is entitled to a judgment as a matter of law." Dreaded, Inc. v. St. Paul Guardian Ins. Co., 904 N.E.2d 1267, 1269-70 (Ind. 2009) (quotations omitted). We construe factual inferences in favor of the non-moving party and resolve all doubts of the existence of a genuine issue of material fact against the moving party. Id. The moving party initially bears the burden of demonstrating a prima facie showing that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Id.

6

## II. Genuine Issue of Material Fact

### A. Intentional Infliction of Emotional Distress

The Sheriff's Department argues any claims brought by Davis individually have been waived because she failed to timely file a tort claims notice for such claim or claims.[2] See Ind. Code § 34-13-3-8. Davis does not refute the Sheriff's Department's argument, but rather, she agrees with the Sheriff's Department that such claims have been waived. We thus conclude Davis's claim for intentional infliction of emotional distress has been waived.

### B. Negligence and Wrongful Death[3]

In 1985, Indiana largely put to rest its common law defense of contributory negligence "that barred recovery on a plaintiff's negligence claim if the plaintiff was even slightly at fault." Penn Harris Madison Sch. Corp. v. Howard, 861 N.E.2d 1190, 1193 (Ind. 2007). In its place, Indiana's Comparative Fault Act created a modified comparative fault scheme whereby "'any contributory fault chargeable to the claimant diminishes proportionately the amount awarded as compensatory damages . . . .'" Hopper v. Carey, 716 N.E.2d 566, 575 (Ind. Ct. App. 1999) (quoting Ind. Code § 34-51-2-5), trans. denied. But "the claimant is barred from recovery if the claimant's contributory fault is greater than the fault of all persons whose fault proximately contributed to the claimant's damages." Ind. Code § 34-51-2-6. However, the legislature

---

[2] A tort claims notice was timely filed, but only to notify the Department of claims that the estate planned to assert. It made no mention of intentional infliction of emotional distress or any damage done to Davis or any individual other than Robinson. See Ind. Code § 34-13-3-10 (notice must include "the extent of the loss," "the names of all persons involved if known," and "the amount of the damages sought").

[3] Because Robinson was not a "child" for the purposes of Indiana Code section 34-23-2-1, the only cognizable action for wrongful death could be brought by his personal representative. See Ind. Code §§ 34-23-1-1, 2. Consequently, Davis's claim for wrongful death has not been waived due to the lack of a tort claim notice stating her desire to bring any personal claims.

specifically provided that the new comparative fault scheme would not apply to governmental entities. See Ind. Code § 34-51-2-2. "This exemption for governmental entities from comparative fault means that the common law contributory negligence principles apply when a governmental entity is the defendant in negligence litigation." Penn Harris, 861 N.E.2d at 1193 (citations omitted).

As the Sheriff's Department points out, however, our supreme court has concluded:

> We think it highly likely that had the Legislature not adopted comparative fault and the contributory negligence regime continued apace, this Court would have adopted the formulation of the last clear chance doctrine embodied in §§ 479 and 480 of the Restatement of the Law (Second) Torts and hold them to be the law of Indiana today.

Id. at 1196-97. Section 479 provides:

> A plaintiff who has negligently subjected himself to a risk of harm from the defendant's subsequent negligence may recover for harm caused thereby if, immediately preceding the harm,
>
> (a) the plaintiff is unable to avoid it by the exercise of reasonable vigilance and care, and
> (b) the defendant is negligent in failing to utilize with reasonable care and competence his then existing opportunity to avoid the harm, when he
> (i) knows of the plaintiff's situation and realizes or has reason to realize the peril involved in it or
> (ii) would discover the situation and thus have reason to realize the peril, if he were to exercise the vigilance which it is then his duty to the plaintiff to exercise.

Restatement (Second) of Torts § 479 (1965).

The Sheriff's Department argues the last clear chance doctrine is inapplicable and that consequently no genuine issue of material fact exists. Before addressing the last clear chance doctrine, we must first determine if a genuine issue of material fact exists that Robinson was contributorily negligent in his death. Even though the two autopsies

8

reported different conclusions—the coroner concluded Robinson died from cocaine intoxication, while Indiana Autopsy concluded there was no definite anatomic cause of death—the Sheriff's Department argues the autopsies are not inconsistent and there is no genuine issue of material fact that Robinson was contributorily negligent in his death because he ingested cocaine. In support of its contention, the Sheriff's Department notes the second autopsy "did not include a toxicology screening, did not include an examination of Robinson's stomach contents, and did not . . . include a cause of death finding, issuing instead a 'Final Pathological Diagnosis.'" Reply Brief of Appellant at 5-6 (quoting Appendix of Appellant at 142).

In light of Dr. Himmelman's statements, we cannot conclude that no genuine issue of material fact exists. He expressly concluded that it cannot be stated with medical certainty that Robinson died of cocaine intoxication. Thus, whether Robinson was contributorily negligent remains a genuine issue of material fact and summary judgment is inappropriate for the claims brought by the estate.

Even assuming for the sake of argument that the evidence definitively supported a conclusion that Robinson was contributorily negligent, other genuine issues of material fact exist that would still render summary judgment inappropriate. Davis argues that even if Robinson was contributorily negligent, recovery is still possible under the last clear chance doctrine. The Sheriff's Department contends there is no genuine issue of material fact that the last clear chance doctrine does not apply. We disagree with the Sheriff's Department.

As to part (a) of Restatement (Second) of Torts § 479, whether Robinson was unable to exercise reasonable vigilance and care to avoid the harm caused by the Sheriff's

9

Department not getting Robinson to a doctor, there is evidence that Robinson told officers multiple times that he needed to see a doctor. While it is true that he could have also said he needed to see a doctor because he ingested cocaine, a genuine issue of material fact exists whether his statements to officers constituted exercising reasonable vigilance and care.

Part (b) of Section 479 requires that the Sheriff's Department knew of Robinson's situation and realized or had reason to realize the peril involved, or that the Sheriff's Department would have discovered the situation if it vigilantly exercised a duty it owed to Robinson. A genuine issue exists concerning both questions. Evidence exists demonstrating that Robinson asked to see a doctor several times because of stomach pain, and that on one such occasion he was clutching his stomach with his arm. Whether or not the Sheriff's Department knew of Robinson's situation or had reason to is for the finder of fact to decide. Similarly, the Sheriff's Department has a duty to check on its inmates once every sixty minutes,[4] and here evidence demonstrates that during the several-hour period between lights out and morning, Robinson died. His cell mate stated he was acting strange before his cell mate went to sleep. A genuine issue exists as to whether the Sheriff's Department would have discovered Robinson's situation if correctional officers had vigilantly exercised their duty of checking on Robinson every sixty minutes.

### Conclusion

Davis has waived her individual claim against the Sheriff's Department, and we therefore reverse and instruct the trial court to grant summary judgment as to her intentional infliction of emotional distress claim. However, as to the claims of the estate,

---

[4] 210 Ind. Admin. Code 3-1-14(a)(1).

10

negligence and wrongful death, we conclude genuine questions of material fact exist and summary judgment is inappropriate.  We therefore reverse in part and affirm in part.

Reversed in part and affirmed in part.

MAY, J., and PYLE, J., concur.