# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 16 2020, 9:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Walter J. Alvarez
Hilary R. Hall
Walter J. Alvarez, P.C.
Crown Point, Indiana

ATTORNEY FOR APPELLEES

Philip E. Kalamaros
Hunt Suedhoff Kalamaros LLP
Saint Joseph, Michigan

## IN THE
# COURT OF APPEALS OF INDIANA

Walter Alvarez,

*Appellant-Plaintiff*,

v.

Joyce Helsel & Pinnacle Insurance Group of Indiana, Inc.,

*Appellees-Defendants*.

September 16, 2020

Court of Appeals Case No. 20A-CT-632

Appeal from the Lake County Superior Court

The Honorable Thomas P. Hallett, Special Judge

Trial Court Cause No. 45D03-1810-CT-598

**Brown, Judge.**

[1] Walter Alvarez appeals the trial court's entry of summary judgment in favor of Pinnacle Insurance Group of Indiana, Inc. ("Pinnacle") and Joyce Helsel ("Helsel," and together with Pinnacle, "Defendants") on his complaint seeking recovery for damage to one of his automobiles. We affirm.

## Facts and Procedural History

[2] On September 27, 2016, Alvarez was involved in a single vehicle accident while driving his Ferrari 458 (the "Ferrari 458"). He filed a complaint against Defendants alleging that he had a vehicle insurance policy with Pinnacle and that due to the negligent acts and/or omissions of Helsel, he was forced to personally incur $242,000 in property damage and repair estimates for the Ferrari 458 which he had reasonably believed and trusted he was insured for via collision coverage. Defendants filed a motion for summary judgment together with designated evidence, and Alvarez filed a response and designated evidence.

[3] The trial court entered an order which granted Defendants' summary judgment motion and which stated:

1. There is no issue with respect to the following material facts:

A. In 2014, [Alvarez] purchased a Ferrari 458 automobile and thereafter began insuring that vehicle through his insurance agent, [Helsel].

B. [Alvarez] owned a number of vehicles insured through Helsel. The individual vehicles carried either comprehensive coverage or collision coverage.

C. Collision coverage includes compensation for collision damage and comprehensive coverage does not.

D. On January 21, 2014, [Alvarez] first requested insurance coverage for the Ferrari 458 through Helsel. His employee made the initial contact to Helsel. Helsel prepared an "Acord Change Form" requesting collision coverage and sent it to [Alvarez] for his review and signature. [Alvarez] signed the form and returned same to Helsel. Helsel sent the form to Arlington/Roe Co., Inc. The form was then forwarded to Chubb National Insurance Company. Chubb accepted the changes and issued an endorsement reflecting the requested change in coverage.

E. On December 29, 2014, [Alvarez], through his employee, requested changes in coverage for a number of vehicles, including the Ferrari 458. [Alvarez] wished to change the coverage on the vehicle from collision to comprehensive. Helsel sent [Alvarez] an "Acord Change Form," but it was not returned. Instead, [Alvarez] made some additional changes in coverage. Helsel sent [Alvarez] a second "Acord Change Form" reflecting the changes, but it too was not returned. On February 3, 2015, Helsel sent [Alvarez] a third "Acord Change Form." On February 4, 2015, [Alvarez] signed and returned the form. Helsel forwarded the form to Chubb and a new endorsement was issued.

F. [Alvarez] had a conversation with Helsel after the acquisition of the subject Ferrari vehicle and after a seasonal change in coverage thereto in which Helsel inquired of the reason for the seasonal coverage change; [Alvarez] indicated his reasoning and desire for such practice and Helsel said ok.

G. [Alvarez] stored the Ferrari during the winter months and did not wish to incur the increased expense associated with collision coverage.

H. On April 13, 2015, [Alvarez], through his employee, requested that coverage on the Ferrari be increased from comprehensive to collision. Helsel followed the same procedure set forth above to make the change.

I. On May 15, 2015, Helsel contacted [Alvarez] to advise him of the upgraded coverage on the Ferrari and to request [Alvarez] to review "which vehicles should have just comprehensive and are NOT being driven."

J. On November 19, 2015, and again on December 8, 2015, [Alvarez], through his employee, requested Helsel to downgrade coverage on the Ferrari from collision to comprehensive. Helsel followed the same procedure in obtaining [Alvarez's] signature on the "Acord Change Form" and forwarding same to Chubb.

K. Helsel never changed insurance coverage on [Alvarez's] vehicles without an "Acord Change Form" signed by [Alvarez].

L. On December 22, 2015, [Alvarez], through his employee, requested Helsel to provide him a copy of the current insurance declaration for his vehicles. The declaration sent to [Alvarez] confirmed the Ferrari only had comprehensive coverage. She included the notation: "Vehicles that are stored and can NOT be driven: 1999 Dodge RAM, 2010 Rolls Royce, 2003 Porsche 911, 2014 Ferrari, 2010 Morgan Aeromax."

M. On March 15, 2016, Helsel sent a FAX to [Alvarez's] office with the following message:

> Per our conversation today, attached is the summary of vehicles for the upcoming renewal that will be taking effect on 3/17/16. Please have [Alvarez] review the attached and advise if any changes are needed for the upcoming renewal. Currently the vehicles that are stored/comp only are the 2010 Rolls Royce, 2003 Porsche 911, 2014 Ferrari

458, & the 2010 Morgan Aeromax. By signing below, no changes are to be made to the renewal policy at this time.

N. [Alvarez] signed the FAX confirming he did not want any changes on the Ferrari and other three (3) vehicles and returned it to Helsel by FAX.

O. [Alvarez] does not allege Helsel had a duty to unilaterally modify insurance coverage on the Ferrari or other vehicles owned by [Alvarez] without [his] direction and consent.

P. On September 21, 2016, [Alvarez], through his employee, requested Helsel to send him a copy of the current insurance declaration. The declaration provided by Helsel indicated the Ferrari and the other three (3) vehicles referenced above only had comprehensive coverage. No request to upgrade coverage on the Ferrari from comprehensive to collision was made by [Alvarez], either directly or through his employee.

Q. On September 27, 2016, while driving the 2014 Ferrari 458 in Merrillville, Indiana, [Alvarez] was involved in a one-car accident resulting in extensive damage to the vehicle.

R. On September 28, 2016, [Alvarez], though his employees, requested Helsel to upgrade coverage from comprehensive to collision for all of his vehicles that only had comprehensive coverage, including the Ferrari.

2. [Alvarez] alleges Helsel had a duty to send him an "Acord Change Form" when he made the request for the insurance declaration on September 21, 2016, and she negligently failed to do so. As a result of her negligence, [Alvarez] sustained damages when he drove his vehicle with inadequate insurance coverage at the time of the accident.

3. There is no genuine issue of material fact concerning the parties' relationship and business practices with respect to [Alvarez's] automobile insurance coverage from January 2014 through September 2016. During that period, Helsel would

provide information on [Alvarez's] insurance coverage, whether unsolicited or at [Alvarez's] request, [Alvarez] would request any changes in the coverage, Helsel would send [Alvarez] an "Acord Change Form," [Alvarez] would sign and return the form, and Helsel would submit the form to Chubb to procure the requested coverage.

4. [Alvarez] has failed to allege any facts or legal authority to support his claim that Helsel had a duty to provide him with an "Acord Change Form" in the absence of any request to do so.

Appellant's Appendix Volume II at 10-14. The court further found that, given the undisputed facts and resolving all inferences in favor of Alvarez, it was not reasonably foreseeable and anticipated that he would drive the Ferrari 458 six days after receiving notice that his insurance was limited to comprehensive coverage, and it granted summary judgment in favor of Defendants.

## *Discussion*

[4]     We review an order for summary judgment *de novo*, applying the same standard as the trial court. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). The moving party bears the initial burden of making a *prima facie* showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Manley v. Sherer*, 992 N.E.2d 670, 673 (Ind. 2013). Summary judgment is improper if the moving party fails to carry its burden, but if it succeeds, then the nonmoving party must come forward with evidence establishing the existence of a genuine issue of material fact. *Id.* We construe all factual inferences in favor of the nonmoving party and resolve all doubts as to the existence of a material issue against the moving party. *Id.* Any doubt as

to any facts or inferences to be drawn therefrom must be resolved in favor of the non-moving party. *Goodwin v. Yeakle's Sports Bar and Grill, Inc.*, 62 N.E.3d 384, 386 (Ind. 2016). Summary judgment should be granted only if the evidence sanctioned by Indiana Trial Rule 56(C) shows there is no genuine issue of material fact and that the moving party deserves judgment as a matter of law. *Id.* In reviewing a trial court's ruling on a motion for summary judgment, we may affirm on any grounds supported by the Indiana Trial Rule 56 materials. *Catt v. Bd. of Comm'rs of Knox Cnty.*, 779 N.E.2d 1, 3 (Ind. 2002).

[5] Alvarez argues that the trial court erred in finding it was not reasonably foreseeable and anticipated that he would drive the Ferrari 458 six days after receiving notice that his insurance was limited and in finding that there was no genuine issue of material fact concerning the parties' relationship and business practices with respect to his automobile insurance. He contends there was a consistent, ongoing pattern of written correspondence and phone calls between himself and Helsel, where "insurance Change Forms, even before signing, had an 'Effective Date of Change' that was the day the change was requested, permitting Alvarez to reasonably believe coverage had been restored to a vehicle on the date of request, not any subsequent date." Appellant's Brief at 13. He asserts: "In other words, the Change Forms, which required Alvarez's signature, thereby became effective on the date of request, while the Defendants have asserted no changes became effective until the unrecorded date of Chubb's final approval," and, without citation to the record, that "[t]his is directly at the heart of the dispute herein, where Alvarez orally requested full coverage be

restored to the [Ferrari 458] on September 21, 2016, but Helsel failed to make this change prior to his accident six days later, nor did she communicate with him regarding this lack of coverage." *Id.* at 14.

[6]     Helsel and Pinnacle maintain that Alvarez never asked for collision coverage to be added for the Ferrari 458 prior to the accident. They argue that numerous times after collision coverage was taken off the Ferrari 458 in 2015, Alvarez was informed there was no collision coverage on the Ferrari, including on September 21, 2016, and contend further that, since there was no request to reinstate the coverage, there can be no liability for the failure to do so.

[7]     The designated evidence shows that Alvarez purchased the Ferrari 458 in 2013 when he had an account with Pinnacle which included a Homeowner's and Automobile Package Insurance Policy, policy number 1187010401 (the "Policy"), which provided he received automobile insurance coverage for various vehicles. On January 21, 2014, Alvarez's employee, Patti Simpson, sent a fax to Pinnacle with an attached purchase order for the Ferrari and requested that insurance coverage be added on the vehicle. On that same day Helsel, as Pinnacle's personal lines manager and customer service agent,[1] sent an email stating: "Attached you find the change request that I need for you to sign and return." Appellant's Appendix Volume II at 128. At some point,

---

[1] In their answers to Alvarez's complaint, Defendants admitted Helsel was licensed to sell and service insurance upon request.

Alvarez signed the policy change request form[2] and, on January 23, 2014, he sent Helsel a fax, to which he attached the signed request form and Helsel's January 21, 2014 email. Helsel sent the signed form to "Arlington/Roe who in turn would send it" to Chubb National Insurance Company, who issued an endorsement reflecting the change. *Id.* at 63. The endorsement was sent to Alvarez's address within a week, and it stated "Effective Date 1/21/14," and indicated added comprehensive and collision coverage for the Ferrari. *Id.* at 143.

[8] On December 29, 2014, Alvarez bought a 2015 Mercedes GL550, and Helsel received a receptionist's message indicating a call from Alvarez's office and stating that Alvarez had "also advised if you need a document signed to send him the document you want signed that he is buying the vehicle today." *Id.* at 158. Helsel sent a fax to Alvarez's office approximately two hours later which began "[p]lease provide to Walter [Alvarez] ASAP" and which continued:

> Wally, As per our conversation today, attached you will find the following:
>
> 1. Memo that both YOU and [Kelli Galanos, Alvarez's former spouse] must sign and return regarding suspending coverage on the Porsche and Ferrari.
>
> 2. Change request Effective 12/29 regarding the above – just you need to sign and return

---

[2] The box provided for the date on the policy change request form in the record was left blank. *See* Appellant's Appendix Volume II at 133.

3.  Change request Effective 12/29 adding 2015 Mercedes GL550 (white)

First, you will need to have your office staff request in writing your changes. It's apparent from the run around today that there is a break off in communication since I could not be provided the correct legal information in order to secure information on your new vehicle.

*Id.* at 160. The attached memo, which the fax referenced, stated it was sent to confirm that all coverages except comprehensive had been requested to be deleted from the Ferrari; requested that he sign and return it; and instructed: "By signing you are confirming that you understand – before driving this vehicle again you MUST contact our office so that the coverages can be added back." *Id.* at 166. An attached Policy Change Request form for the Ferrari and a 2015 Porsche Turbo stated an Effective Date of Change of "12/29/14"; indicated "delete all coverage except other than collision (comp) from the 2014 Ferrari" in the remarks box; and had a blank space in the boxes provided for the Insured's Signature and the date. *Id.* at 164.

[9]     On January 8, 2015, Helsel sent by fax a "revised form on suspending coverage on the Ferrari and the 'correct' Porsche."[3] *Id.* at 169. The fax indicated she needed the form signed by Alvarez and a memo reflecting suspended coverage

---

[3] The policy change request form referenced in, and attached to, the January 8, 2015 fax indicated it was for the Ferrari and a Porsche 911, and like the previous form stated an Effective Date of Change of "12/29/14"; indicated "delete all coverage except other than collision (comp) from the 2014 Ferrari"; and had a blank space in the boxes provided for the Insured's Signature and the date. Appellant's Appendix Volume II at 170.

signed by both Alvarez and his former spouse. *Id.* at 169. The attached memo was dated "01/08/2015" and stated that it was to confirm that all coverages except comprehensive had been requested to be deleted from the Ferrari, "effective today 12/29/14."[4] *Id.* at 172. That same day, Helsel sent Jacki Hendrickson[5] an email which stated: "Per our conversation, please . . . . just add the new vehicle. We are going to hold off suspending coverage on the Ferrari and Porsche until I have his signature in hand." *Id.* at 175. On January 29, 2015, someone from Alvarez's office sent Helsel a fax and attached a bill of sale for another vehicle. On February 3, 2015, Helsel sent a third Acord Change Form and memo, which Alvarez signed and returned the next day.

[10] On December 8, 2015, Helsel sent a fax to an employee of Alvarez which stated that, per a conversation earlier that day, she had attached "the forms that need to be signed and returned for the 3 additional vehicles that [Alvarez] has requested also be changed to comp only." Appellant's Appendix Volume III at 31. One of the faxed documents was titled "Lay-Up of Vehicle Coverages" and, above spaces for the signatures of Alvarez and his former spouse, stated:

> I (we) hereby request all coverages be deleted EXCEPT,
> comprehensive coverages . . . . Furthermore, I (we) understand
> all other coverages . . . are null/void EFFECTIVE: 12/8/15.

---

[4] Like the memo which preceded it, this memo also requested it be signed and returned and instructed: "By signing you are confirming that you understand – before driving this vehicle again you MUST contact our office so that the coverages can be added back." Appellant's Appendix Volume II at 172.

[5] A 2016 email to Helsel includes Hendrickson's signature block, which indicates she was a personal lines underwriter for Arlington/Roe & Co., and a statement above the signature block stating that Arlington/Roe represents Chubb.

The latter coverages as requested by YOU will remain until YOU notify our office to add/change coverage. The following vehicle will have Comprehensive Coverage Only (this means the vehicle can NOT be driven for ANY reason): 2014 Ferrari . . . .

*Id.* at 32. The attached Acord Change Form listed the Ferrari 458 and stated: "delete all coverage but comprehensive coverage from the [Ferrari 458] (garaged in Ober)." *Id.* at 33. Following another reminder fax from Helsel sent two days later, Alvarez signed and returned the document and the form. On December 22, 2015, Helsel sent a fax to Alvarez's employee with the subject, "Last Endorsement," which listed "Vehicles that are stored and can NOT be driven," including the Ferrari 458, and the fax included a copy of the last issued endorsement showing the vehicles on the Policy. *Id.* at 59. In the Vehicle Detail Premium Update section, the endorsement listed a premium amount for Comprehensive coverage for the Ferrari 458 and stated "Not Selected" for Collision coverage. *Id.* at 63.

[11] Defendants designated an affidavit by Helsel in which she: stated she faxed a message on February 5, 2016, to remind Alvarez that the Ferrari 458 and other vehicles had only comprehensive coverage at the upcoming renewal day of March 17th; faxed a second request on February 23, 2016, for confirmation of the previous fax; faxed and emailed messages on March 15, 2016, notifying him again that the Ferrari 458 and other vehicles had only comprehensive coverage, to which he responded and indicated receipt; and received a memo indicating

Alvarez did not want to add collision coverage on the Ferrari 458.[6] She also stated that on March 22, 2016, an employee of Alvarez called and asked to confirm the coverage on certain vehicles, she sent a text message to Alvarez which referenced the March 15th messages "showing all vehicle coverages" and stated "No changes since last week," and she sent a copy of the current declarations that showed the Ferrari had comprehensive coverage only. Appellant's Appendix Volume II at 67.

[12] According to Helsel's affidavit, on September 21, 2016, an employee of Alvarez requested a copy of the current declarations and Helsel sent his office a copy which showed the Ferrari 458 had only comprehensive coverage. A fax from the same day from Helsel to Simpson, Alvarez's employee, states, "Here is the declaration page for the Valparaiso home that you requested." Appellant's Appendix Volume III at 122. A premium summary renewal sheet showed a summary of coverages under the Policy which referred to an address in Valparaiso, Indiana, listed the Ferrari, and stated with respect to the vehicle "Comprehensive" under the "Coverage" column. *Id.* at 125. The day following the accident involving the Ferrari 458, two employees of Alvarez requested Pinnacle to reinstate collision coverage on all of his vehicles which had only comprehensive coverage.

---

[6] The record contains a fax from March 15, 2016, that states, "Currently the vehicles that are stored/comp only are [several other vehicles, and the] Ferrari 458," and contains a signature above Alvarez's name and below the statement: "By signing below, no changes are to be made to the renewal policy at this time." Appellant's Appendix Volume III at 108.

[13] Moreover, paragraph 5 of Helsel's affidavit explains that each time Alvarez wanted a change on the Policy

> he or one of his employees at The Law Office of Walter J, Alvarez initiated action by calling or faxing Pinnacle with a request. Then, I would prepare an Acord Change Request for him to sign and return. When the signed form was returned, I would then send the signed form to Arlington/Roe & Co., Inc. . . . who would in turn send it to Chubb National Insurance Company for the change. If the change was accepted by Chubb, an endorsement would be issued and mailed to the Policy address . . . within a week.

*Id.* at 63. While Alvarez asserts that he orally requested full coverage be restored to the Ferrari 458 on September 21, 2016, he fails to cite to the record, and our review indicates that this is a misstatement and it is unsupported by the record. Alvarez does not point to designated evidence that either he or one of his employees requested, either verbally or in writing, that collision coverage be added for the Ferrari before the September 27, 2016 accident and after his December 8, 2015 request that collision coverage be dropped for the Ferrari.

[14] Based upon the designated evidence, and there being no genuine issue of material fact, we affirm the entry of summary judgment in favor of Defendants.[7]

---

[7] To the extent Alvarez argues that the last clear chance doctrine applies and cites *Penn Harris Madison School Corp. v. Howard*, 832 N.E.2d 1013, 1017 (Ind. Ct. App. 2005), *vacated*, 861 N.E.2d 1190 (Ind. 2007), he did not claim the doctrine was applicable before the trial court and the doctrine does not apply to the facts in this case. To the extent Alvarez argues a special relationship existed between himself and Helsel, we note the factors demonstrating the existence of a special relationship between an insurance agent and an insured include whether the agent: 1) exercised broad discretion in servicing the insured's needs; 2) counseled the insured concerning specialized insurance coverage; 3) held himself out as a highly-skilled insurance expert; or 4)

Affirmed.

Robb, J., and Crone, J., concur.

---

received compensation for the expert advice provided above the customary premium paid. *Myers v. Yoder*, 921 N.E.2d 880, 885 (Ind. Ct. App. 2010). Based upon our review of the designated evidence, we cannot say there is a material question of fact as to whether a special relationship existed between Alvarez and Helsel.